IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

TRAVIS EUGENE BETTS,                    )
                                        )
    Plaintiff,                          )
                                        )
    v.                                  )          No. 4:21-cv-00023-DGK
                                        )
JACKSON COUNTY, MISSOURI,               )
et al.,                                 )
                                        )
    Defendants.                         )

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Beginning in April of 2020, Plaintiff Travis Eugene Betts was detained in the Jackson County Detention Center ("JCDC") awaiting trial. During his pretrial detention, three other JCDC inmates assaulted Plaintiff in his cell. Plaintiff has brought this action against the following defendants: (1) Jackson County, Missouri; (2) Diane Turner, Director of the Jackson County Department of Corrections; (3) Captain Tony L. Bowers, a corrections officer and supervisory captain at JCDC; (4) Officer Linton J. McKenzie, a corrections officer at JCDC; and (5) "John Doe I and John Doe II," two unnamed corrections officers at JCDC. Plaintiff asserts various claims for violations of his Fourteenth Amendment rights under 42 U.S.C. § 1983 as well as state-law tort claims.[1]

Now before the Court is Defendants' Joint Motion to Dismiss for failure to state a claim. ECF No. 14. For the reasons stated below, the motion is GRANTED IN PART.

---

[1] Plaintiff's § 1983 claims assert that Defendants violated Plaintiff's Eighth Amendment and Fourteenth Amendment Rights. However, since Plaintiff was a pretrial detainee, the Fourteenth Amendment is the only provision relevant to Plaintiff's § 1983 claims. *See Holden v. Hirner*, 663 F.3d 336, 340–41 (8th Cir. 2011).

## Standard of Review

A claim may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). However, "the Court is not bound to accept as true a legal conclusion couched as a factual allegation." *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Id.*

In reviewing the complaint, the Court construes it liberally and draws all reasonable inferences from the facts in Plaintiff's favor. *Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 961 (8th Cir. 2009). The Court generally ignores materials outside the pleadings but may consider materials that are part of the public record or materials that are necessarily embraced by the pleadings. *Miller v. Toxicology Lab. Inc.*, 688 F.3d 928, 931 (8th Cir. 2012). Matters necessarily embraced by the pleadings include "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Miller*, 688 F.3d at 931 n.3). Plaintiff has incorporated in the operative complaint an audit of JCDC which was

2

completed at the request of the Jackson County Legislature in September 2017 ("2017 Jail Audit"). ECF No. 10-2. Among its findings, the 2017 Jail Audit concluded that JCDC was overcrowded, had inadequate camera coverage, poor inmate supervision, and was understaffed. *Id.* at 12–13, 15–16, 19. Defendant has also attached an assessment of JCDC conducted in 2018 at the request of Jackson County. ECF No. 10-5. Finally, Plaintiff attached the jail report of his assault. ECF No. 10-8. The Court considers these documents in ruling on this motion to dismiss.[2]

## Factual Background

Plaintiff alleges the following facts, which the Court accepts as true for the purposes of this motion: On or around April 8, 2020, Plaintiff was arrested and committed to JCDC for pretrial detention. Am. Compl. ¶ 18, ECF No. 10. On or before June 1, 2020, Plaintiff was moved to housing unit J6H on the sixth floor of JCDC.[3] *Id.* ¶ 37.

Two other inmates, Treyvohn Covington and Logan England, were also housed on the sixth floor at the same time as Plaintiff. *Id.* On multiple occasions, Inmates Covington and England had each been able to physically access restricted areas, including the cells of other JCDC inmates during times when inmates were prohibited from leaving their cells. *Id.* ¶¶ 70—71. Inmates Covington and England were each confined in JCDC on charges relating to violent felonies, and each had each been previously placed in disciplinary segregation for violently attacking or fighting corrections officers and other inmates. *Id.* ¶¶ 30–35. When Inmates Covington or England had engaged in any sort of physical altercation, the on-duty corrections

---

[2] Plaintiff also attached a number of news articles, ECF Nos. 10-1, 10-3, 10-6, 10-7. The Court does not consider these in ruling on this motion.

[3] Plaintiff was housed in various housing units during his time at JCDC, and alleges that JCDC staff moved him a number of times "due to overcrowding that was prevalent throughout JCDC." Am. Compl. ¶ 36.

3

officers would prepare a "Departmental Report" which was then distributed throughout the chain of command at JCDC. *Id.* ¶¶ 33, 35.

JCDC policies require on-duty corrections officers to conduct a well-being check every twenty-nine minutes in order to ensure that inmates remain in their authorized locations and to ensure the health and safety of the inmates. *Id.* ¶ 29.a. Corrections officers are also required to ensure that cell door locking mechanisms are operational, and during well-being checks in the evenings are required to ensure that cell door locking mechanisms are closed. *Id.* ¶ 29.b. Corrections officers are also required to monitor surveillance cameras. *Id.* ¶ 29.

Despite JCDC policies, prior to June 1, 2020, well-being checks were often performed only once every three to four hours. *Id.* ¶ 29. On occasion, JCDC corrections officers would only perform one well-being check per day. *Id.* This was because JCDC was understaffed and overcrowded throughout Plaintiff's incarceration. *Id.* ¶¶ 48–49.

On the evening of June 1, 2020, Defendant Bowers was on duty as the supervising shift administrator, and Defendant McKenzie and the defendants Does were on duty as corrections officers.[4] *Id.* ¶ 61. After all inmates were supposed to be locked in their cells, Inmates Covington and England, along with one other inmate, exited their cells and began roaming around JCDC[5]. *Id.* ¶¶ 38–39. Plaintiff has pled that the three inmates were able to leave their cells either because corrections officers did not perform any well-being checks the evening of

---

[4] A liberal construction of the Amended Complaint requires the Court to assume that Defendant Bowers maintained duties as a corrections officer while also serving as a supervisor. Am. Compl. ¶ 6 (listing Defendant Bowers as a corrections officer and supervisory captain); *id.* ¶ 28 (noting that Defendant Bowers was on duty as a corrections officer during the relevant period and was required to monitor surveillance cameras); *id.* ¶ 61 (noting that Defendant Bowers was on duty as the supervising shift administrator); *id.* ¶ 113 ("At all times in which Plaintiff was incarcerated at JCDC, Defendant[] Bowers . . . had a ministerial duty to possess and use the same degree of care ordinarily used by reasonable detention center authorities to properly oversee inmates and protect them from unreasonable risks of harm . . . ."). *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) (noting that a complaint's legal conclusions may serve to clarify a complaint's framework).

[5] It's unclear from the Amended Complaint whether the three inmates were able to reach other floors.

June 1 or the morning of June 2, or, in the alternative, because corrections officers failed to lock the three inmates' cell doors during the evening well-being check,[6] or, in the alternative, because the cell door locks were faulty.  *Id.* ¶ 57.

The three inmates roamed the detention center for over four hours and were not discovered by corrections officers monitoring security cameras.  *Id.* ¶ 59.  The three then entered housing unit J6H and proceeded to Plaintiff's cell, which was likewise unlocked.  *Id.* ¶ 56.  They then entered Plaintiff's cell, drug him from bed, and beat him for forty minutes.  *Id.* ¶¶ 60, 62.

On the morning of June 2, Defendant McKenzie found Plaintiff in his cell, along with the three other inmates.  *Id.* ¶ 62.  Plaintiff's head was bleeding profusely and he had a number of other injuries.  *Id.* ¶ 63.  Defendant McKenzie did not provide first aid to Plaintiff, and did not request immediate medical assistance.  *Id.* ¶ 63.a.  Defendant Bowers likewise did not request medical assistance for Plaintiff.  *Id.*

### Procedural History

Plaintiff filed this action on January 13, 2021.  Compl., ECF No. 1.  He later requested leave to file an Amended Complaint, which the Court granted.  Order, ECF No. 9.

The Amended Complaint asserts the following 1983 claims: Failure to Protect against Jackson County, Diane Turner in her official and personal capacity, Captain Tony L. Bowers in his official and personal capacity; Officer Linton J. McKenzie in his official and personal capacity; and John Doe I and John Doe II in their official and personal capacities, (Count I); "Supervisory Monell Liability" against Jackson County, Defendant Turner in her official and personal capacity, Defendant Bowers in his official and personal capacity, and the defendants

---

[6] On the evening of June 1, Defendants Bowers, McKenzie, and the defendants Does performed—at most—a single well-being check.  *See id.* ¶ 56, 57.  Likewise, on the morning of June 2, Defendants Bowers, McKenzie, and the defendants Does performed—at most—a single well-being check.  *See id.*

Does in their official and personal capacities, (Count II); Failure to Train, Supervise, and Discipline against Jackson County, Defendant Turner in her official and personal capacity, Defendant Bowers in his official and personal capacity, and the defendants Does in their official and personal capacities, (Count III); and Failure to Provide Adequate Medical Care against Jackson County, Defendant Bowers in his official and personal capacity, Defendant McKenzie in his official and personal capacity, and the defendants Does in their official and personal capacities (Count VI). Am. Compl.

Plaintiff also asserts the following negligence claims: a claim against Jackson County based on premises liability, (Count IV); and a claim based on breach of ministerial duties against Defendant Bowers in his official and personal capacity, Defendant McKenzie in his official and personal capacity, and the defendants Does in their official and personal capacities (Count V). *Id.*

## Discussion

As a threshold matter, Defendants argue that Plaintiff's claims should be dismissed because Plaintiff's complaint did not allege that he exhausted his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1991e.[7] Because Plaintiff is no longer incarcerated, he need not exhaust his administrative remedies.[8] *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005). The Court now turns to the contents of the

---

[7] It is not clear what administrative remedies a former inmate would have under the PLRA.

[8] Plaintiff's complaint did not state that he had been released from JCDC, though he stated as such in his response to the instant motion. Suggestions in Opp'n at 14–15, ECF No. 16. Defendants do not dispute that he has been released, but do argue that—since Plaintiff did not state in the Amended Complaint that he was no longer incarcerated—the Amended Complaint should nonetheless be dismissed. Reply at 4–5, ECF No. 17. If the Court were to dismiss the case on this basis, Plaintiff could simply refile a complaint identical to the Amended Complaint in all but one respect. Such an exercise would only serve to delay a resolution of this case, and the Court declines to dismiss the case on this basis.

Amended Complaint. For the reasons stated below, Defendants' motion is GRANTED IN PART.

## I.  John Doe Claims

Regarding Plaintiff's claims against the defendants Does, fictitious parties generally may not be named as defendants in a civil action. *Phelps v. U.S. Fed. Gov't*, 15 F.3d 735, 738–39 (8th Cir. 1994); *see also J.P. v. Doe I*, No. 4:14-CV-1882-RWS, 2016 WL 4720456, at *3 (E.D. Mo. Sept. 9, 2016). However, sua sponte[9] dismissal of a John Doe claim "is proper only when it appears that the true identity of the defendant cannot be learned through discovery or the court's intervention." *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985). This case was filed in January of 2021, and Plaintiff—despite ample opportunity for discovery—has been unable to determine the identity of the defendants Does. Because Plaintiff's deadline to file an amended complaint including the identity of the defendants Does was on October 4, 2021, Scheduling Order, ECF No. 19, the Court concludes that Plaintiff is unable to determine the defendants Does' identity. All claims against the defendants Does are DISMISSED WITHOUT PREJUDICE.

## II.  1983 Claims

### a.  Defendants' motion to dismiss Plaintiff's 1983 claim against Defendants Turner, Bowers, and McKenzie in their personal capacity for failure to protect is DENIED (Count I).

Plaintiff's first 1983 claim alleges that Defendants Turner, Bowers, and McKenzie—in their personal capacity—failed to protect Plaintiff from being attacked by other inmates. Am. Compl. ¶¶ 68–74. Defendants argue that Bowers, Turner, and McKenzie are entitled to qualified immunity. Suggestions in Supp. at 11–13, ECF No. 15.

---

[9] Defendants moved to dismiss Plaintiff's various claims against the defendants Does on different grounds.

### i. Plaintiff has alleged that Defendants Bowers, Turner, and McKenzie violated his Fourteenth Amendment right to protection from violence at the hands of other inmates.

Correctional officials have a duty to protect pretrial detainees from violence at the hands of other prisoners. *See Holden v. Hirner*, 663 F.3d 336, 340–41 (8th Cir. 2011). "Pretrial detainee § 1983 claims are analyzed under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment prohibition of cruel and unusual punishment." *Id.* at 341. "This makes little difference as a practical matter, though: Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007).

In order for a pretrial detainee to plead a Fourteenth Amendment claim for failure to protect, he must allege (1) that he was incarcerated under conditions posing a substantial risk of serious harm, and (2) that the defendant or defendants were "deliberately indifferent to the substantial risk of serious harm." *Chavero-Linares v. Smith*, 782 F.3d 1038, 1041 (8th Cir. 2015) (quotation omitted). To establish the second element, a plaintiff must allege that the defendant or defendants "were aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that the defendant or defendants had drawn such an inference. *Id.* (quoting *Schoelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010)). Stated another way, a plaintiff need allege that a jail official "acted or failed to act despite [his or her] knowledge of a substantial risk of serious harm." *Nelson v. Shuffman*, 603 F.3d 439, 447 (8th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). "The question of whether the official knew of the substantial risk is a factual one subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* (quotation omitted). Further, "a

plaintiff is not required to allege and prove that the defendant . . . specifically knew about or anticipated the precise source of the harm." *Id.* (quotation omitted).

Plaintiff has pled that he was incarcerated under conditions posing a substantial risk of serious harm. For example, he alleges that JCDC was overcrowded; that corrections officers were consistently performing well-being checks only once every three to four hours and sometimes would only conduct one well-being check per day; that corrections officers either failed to lock cell doors or that locking mechanisms installed on cell doors did not prevent inmates from leaving their cells and entering other cells; that violent inmates such as Covington and England were therefore able to leave their cells and access the cells of other inmates; that Inmates Covington and England had on several previous occasions obtained unauthorized access to cells of other inmates in JCDC; that JCDC staff failed to monitor security cameras; that inmates had interfered with security cameras to prevent transmission of video to monitors; that portions of JCDC were out of view of security cameras; and that security cameras and monitors were not functioning properly. Am. Compl. ¶¶ 28, 29, 30–33, 36, 38, 70, 71. Plaintiff has therefore met the first element of his failure to protect claim against Defendants Turner, Bowers, and McKenzie.

In regards to the second element, Plaintiff has also sufficiently alleged that Defendants Turner, Bowers, and McKenzie were deliberately indifferent to this substantial risk of serious harm.

Regarding Defendant Turner, the 2017 Jail Audit[10] noted that JCDC was overcrowded, had inadequate camera coverage, poor inmate supervision, and was understaffed. 2017 Jail

---

[10] Defendants argue that the 2017 Jail Audit does not establish any of Plaintiff's factual allegations since JCDC could have fixed the issues identified in the audit before Plaintiff sustained his injuries in June of 2019. In order to survive a motion to dismiss, Plaintiff need merely allege facts sufficient to state a plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiff does not bear the burden to show that the issues

9

Audit at 13, 19–20, ECF No. 10-2. Considering Defendant Turner's position as Director of the Jackson County Department of Corrections, the Court concludes that Plaintiff has sufficiently alleged that Defendant Turner was privy to the findings of the 2017 Jail Audit and had inferred that inmates were under substantial risk of serious harm. *See Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007) ("An obvious risk of a harm justifies an inference a prison official subjectively disregarded a substantial risk of serious harm to the inmates").

Plaintiff has also sufficiently alleged that Defendants Bowers and McKenzie were deliberately indifferent to the substantial risk of harm to inmates. The Amended Complaint states that that Defendants Bowers and McKenzie were on duty on the sixth floor of JCDC the night of June 1 and the morning of June 2, 2019, Am. Compl. ¶ 61; that they performed—at most—a single well-being check the night of June 1 and a single well-being check the morning of June 2, *id.* ¶¶ 56–57; and that they had knowledge that Inmate Covington and England had a history of violent altercations with and attacks upon other inmates, *id.* ¶¶ 32–34. Plaintiff has therefore alleged that they possessed knowledge of facts from which a reasonable person could infer that a substantial risk of serious harm to inmates existed. Likewise, because they were trained in JCDC policies, *id.* ¶ 29, Plaintiff has sufficiently alleged that Defendants Bowers and McKenzie actually inferred that inmates were under a substantial risk of serious harm.

### ii. Defendants Turner, Bowers, and McKenzie are not entitled to qualified immunity on Plaintiff's failure to protect claim.

Defendants argue they are entitled to qualified immunity in regards to Plaintiff's Failure to Protect Claim. Suggestions in Supp. at 11–12. "Qualified immunity shields a public official from suit for civil damages when his 'conduct does not violate clearly established statutory or

---

identified in the 2017 Jail Audit remained unsolved in June of 2020. Defendant bears this burden, and this would properly be addressed on summary judgment or at trial.

constitutional rights of which a reasonable person would have known.'" *Bernini v. City of St. Paul*, 665 F.3d 997, 1002 (8th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Granting a 12(b)(6) motion on the basis of the qualified immunity is only appropriate "when the immunity is established on the face of the complaint," *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1058 (8th Cir. 2013) (quotation omitted), meaning that the plaintiff "can prove no set of facts in support of [his constitutional] claims which would entitle him to relief." *Cent. Airlines, Inc. v. United States*, 138 F.3d 333, 334 (8th Cir. 1998) (quotation omitted). To determine whether Defendants Turner, Bowers, and McKenzie are entitled to qualified immunity, the Court must determine (1) whether Plaintiff has alleged a deprivation of a constitutional right, and (2) whether the right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

As the Court noted above, Plaintiff has sufficiently alleged that Defendants Turner, Bowers, and McKenzie violated his Fourteenth Amendment rights by failing to protect him from violence at the hands of other prisoners. Further, it has long been established that the Fourteenth Amendment requires corrections officials to protect pretrial detainees from violence at the hands of other inmates. *See Holden v. Hirner*, 663 F.3d 336, 340–41 (8th Cir. 2011); *see also Walton v. Dawson*, 752 F.3d 1109, 1118 (8th Cir. 2014) ("There is no doubt the right at issue—a pretrial detainee's right to be protected from sexual assault by another inmate—is clearly established."); *id.* at 1120 ("Detainees are most vulnerable when asleep, and the Constitution guarantees a minimum right to sleep without legitimate fear of a nighttime assault by another detainee."); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (applying the Eighth Amendment). The Court concludes that immunity is not established on the face of Plaintiff's complaint. Defendants' motion is DENIED in regards to Plaintiff's failure to protect claims against Defendants Turner, Bowers, and McKenzie in their personal capacity.

### b. Defendants' motion to dismiss Plaintiff's § 1983 claim for failure to protect against Jackson County is DENIED (Count I).

Defendants next argue Plaintiff's § 1983 failure to protect claim against Jackson County should be dismissed because Plaintiff has not pled that the violation of his Fourteenth Amendment right was caused by an official policy or custom. Suggestions in Supp. at 7–9.

To state a claim for relief against a local government under § 1983, *Monell v. Dep't of Social Services* requires a plaintiff plead a deprivation of federal constitutional or statutory rights caused either by the execution of a "policy statement, regulation, or decision officially adopted and promulgated by [the municipality's] officers," or by the municipality's execution of a custom "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690–691 (1978). The Amended Complaint asserts legal conclusions that Jackson County and Defendant Turner promulgated an official policy of underpaying corrections officers, understaffing JCDC, and installing and using faulty locking mechanisms, Am. Compl. ¶¶ 44–45, 51, ECF No. 10, but it makes no factual allegations that such a policy existed. Plaintiff has nonetheless sufficiently alleged facts showing the existence of an official custom whereby JCDC inmates were incarcerated without adequate supervision and without the protection of adequate locking mechanisms.

In order to plead a deprivation resulting from an official custom, a plaintiff must allege

(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014).

Case 4:21-cv-00023-DGK   Document 21   Filed 03/01/22   Page 12 of 27

The Amended Complaint alleges facts showing the existence of a continuing, widespread and persistent pattern of conduct whereby Jackson County employed an insufficient amount of corrections officers and maintained camera coverage and locking mechanisms ineffective to ensure inmate safety. Am. Compl. ¶¶ 23, 29; 2017 Jail Audit at 10, ECF No. 10-2 ("Staff said there are routinely fights in the multipurpose rooms because of inadequate camera coverage. During the last visit, an inmate reported that an inmate was beaten by three other inmates and required medical attention."); *id.* at 19 (recording observations consistent with poor inmate supervision such as a large amount of graffiti in the housing units, inmates possessing extra uniforms, poor sanitation, and that correction officers often exceeding the thirty-minute maximum interval between well-being checks); *id.* ("During the first visit to the facility, the auditor found one floor very crowded with 190 inmates, with only two staff.").

Plaintiff has also alleged facts showing that Jackson County's policymaking officials—specifically the Jackson County Legislature and Defendant Turner—had notice of these failures and yet were deliberately indifferent towards the risks posed to inmates: The Jackson County Legislature requested the audit of JCDC in February 2017, and the contractor completed the audit and submitted it to the Jackson County Legislature in September 2017. 2017 Jail Audit at 4. Plaintiff's detention began in April 2020, yet he alleges that—nearly three years after the contractor submitted the audit—JCDC remained understaffed, that camera coverage remained inadequate, and that corrections officers still were not performing frequent well-being checks. Am. Compl. ¶¶ 28–29; *see Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 829 (8th Cir. 2013) (noting that a plaintiff may establish deliberate indifference or tacit authorization towards employee conduct if "the incidents occurred over a course of time").

Finally, because Plaintiff's alleged injury was a direct result of Jackson County's custom of understaffing JCDC, failing to supervise inmates, maintaining inadequate camera coverage and inadequate locking mechanisms, Plaintiff has stated a 1983 claim for failure to protect against Jackson County and against Defendants Turner, Bowers, and McKenzie in their official capacities, and Defendants' motion is DENIED in regard to these claims.

### c. Defendants' motion to dismiss Plaintiff's § 1983 claim for failure to protect against Defendants Turner, Bowers, and McKenzie in their official capacity is GRANTED (Count I).

Defendants argue Plaintiff's § 1983 claims against Defendants Turner, Bowers and McKenzie in their official capacity should be dismissed because it is redundant of Plaintiff's Count I against Jackson County. Suggestions in Supp. at 19–20. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Because Plaintiff's failure-to-protect claim against Defendants Turner, Bowers, and McKenzie in their official capacities is functionally equivalent to Plaintiff's failure-to-protect claim against Jackson County, *see id.*, Defendants' motion is GRANTED. Count I against Defendants Turner, Bowers, and McKenzie in their official capacity is DISMISSED WITHOUT PREJUDICE.

### d. Defendants' motion to dismiss Plaintiff's § 1983 claims against Defendants Turner and Bowers in their personal capacity for failure to train and failure to supervise is DENIED (Count III).

Plaintiff also brings a § 1983 Claim against Defendants Turner and Bowers in their personal capacity for failure to train and supervise subordinate correctional officers. Am. Compl. ¶¶ 83–94. Plaintiff alleges that Defendants Turner and Bowers violated Defendant's Fourteenth Amendment rights because they were aware that the corrections officers who they supervised had engaged in "a widespread and persistent pattern of permitting inmates known to be dangerous and threatening to other inmates" to gain access to unauthorized areas, including

14

the housing units and cells of other inmates, and that Defendants Turner and Bowers failed to train, supervise, and discipline corrections officers to ensure that corrections officers would not permit inmates to access unauthorized areas. *Id.* ¶¶ 84–88. Defendants argue that Turner and Bowers are entitled to qualified immunity. Suggestions in Supp. at 11–13.

> ### i. Plaintiff has alleged that Defendants Turner and Bowers violated his Fourteenth Amendment right by failing to train subordinate corrections officers.

"A supervisor's failure to train an inferior officer [gives rise] to individual liability under § 1983 if (1) the failure to train amounts to deliberate indifference to the rights of persons [inmates], and (2) the alleged failure to train actually caused the constitutional deprivation." *McGuire v. Cooper*, 952 F.3d 918, 923 (8th Cir. 2020) (quotations omitted). In the context of a failure-to-train claim, a supervisor demonstrates deliberate indifference when

> in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor] can reasonably be said to have been deliberately indifferent to the need. In other words, the plaintiff must demonstrate that the [supervisor] had notice that its procedures were inadequate and likely to result in a violation of constitutional rights.

*Otey v. Marshall*, 121 F.3d 1150, 1156 (8th Cir. 1997) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996)).

Plaintiff has sufficiently pled that Defendants Turner and Bowers knew that dangerous inmates were able to gain access to the cells of other inmates and failed to train corrections officers to prevent this from occurring. Am. Compl. ¶¶ 85, 87. Assaults upon other inmates are likely where violent inmates are able to roam a jail freely, and the risk to Plaintiff's constitutional rights in such a situation is obvious. As such, Plaintiff has pled that Defendants Turner and Bowers were deliberately indifferent to Plaintiff's right to be free from attack.

15

Plaintiff has also pled that the attack was actually caused by Defendants Turner and Bowers failure to train corrections officers. *See City of Canton v. Harris*, 489 U.S. 378, 391 (1989) (holding that causation is established where "the identified deficiency in a city's training program [is] closely related to the ultimate injury"). As such, Plaintiff has sufficiently pled a failure-to-train claim against Defendants Turner and Bowers.

> ii. **Plaintiff has alleged that Defendants Turner and Bowers violated his Fourteenth Amendment right by failing to supervise subordinate corrections officers.**

In order to establish a claim for failure to supervise, a plaintiff must show that a supervisor: "1) [r]eceived notice of a pattern of unconstitutional acts committed by subordinates; 2) [d]emonstrated deliberate indifference to or tacit authorization of the offensive acts; 3) [f]ailed to take sufficient remedial action; and 4) that such failure proximately caused injury to [the plaintiff]." *McGuire*, 952 F.3d at 922 (quotation omitted). In the context of a failure-to-supervise claim, a supervisor demonstrates deliberate indifference when he or she has notice that subordinates are not sufficiently supervised and that the lack of supervision is likely to result in future constitutional violations. *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018).

Plaintiff has sufficiently pled all the elements of a failure-to-supervise claim. He alleges that both Defendants Turner and Bowers knew that corrections officers were failing to protect inmates from attack in their cells by other violent inmates. Am. Compl. ¶ 85. As the Court noted above, the risk to inmates in such a situation is obvious, and Plaintiff has therefore pled that Defendants Turner and Bowers were deliberately indifferent to the fact that corrections officers were failing to protect inmates. Likewise, Plaintiff has pled that Defendants Turner and Bowers failed to implement any additional supervision to ensure that future constitutional violations would not occur. *Id.* ¶ 87. Finally, Plaintiff has sufficiently alleged that his injury was

actually and proximately caused by Defendants Turner and Bowers' failure to ensure corrections officers were preventing dangerous inmates from accessing the rooms of other inmates.

### iii. Defendants Turner and Bowers are not entitled to qualified immunity.

As the Court noted above, Plaintiff's failure-to-train and failure-to-supervise claims allege a deprivation of a constitutional right. Further, as the Court noted in Section II.a.ii., Plaintiff's Fourteenth Amendment right to be protected from violence at the hands of other inmates was clearly established. As such, Defendants' motion to dismiss Plaintiff's failure-to-train and failure-to-supervise claims against Defendants Turner and Bowers in their personal capacity is DENIED.

### e. Defendants' motion to dismiss Plaintiff's 1983 claims against Jackson County and for failure to train and failure to supervise is DENIED (Count III).

Defendants also argue that Plaintiff's failure-to-train and failure-to-supervise claims against Jackson County and Defendants Turner and Bowers in their official capacity should be dismissed because Plaintiff has not pled that the violation of his Fourteenth Amendment right was caused by an official policy or custom. Suggestions in Supp. at 7–9.

In the context of claims against a municipality for failure to supervise or failure to train employees, municipal liability "requires proof that the failure 'amounts to deliberate indifference to the rights of persons with whom the [employee] come[s] into contact.'" *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). Deliberate indifference is shown where "in light of the duties assigned to specific officers or employees the need for more or different training [or supervision] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *Id.* (quoting *City of Canton*, 489 U.S. at 390). In addition, the municipality's inaction must be a

"moving force" behind the constitutional violation, *id.* (citation omitted), meaning that the inaction actually caused the plaintiff's injury. *City of Canton*, 489 U.S. at 379.

Defendant Turner, as Director of the Jackson County Department of Corrections, is a policymaker for Jackson County. As the Court noted in Section II.d.i and ii, Plaintiff sufficiently alleges that Defendant Turner demonstrated deliberate indifference because she had notice that corrections officers were failing to prevent dangerous inmates from accessing the rooms of other inmates and failed to implement any additional training or supervision over corrections officers to prevent this from occurring. As the Court also noted, Plaintiff has also alleged that Defendant Turner's failure to implement additional training or supervision actually caused Plaintiff's injury.

As such Plaintiff has sufficiently pled his failure-to-train and failure-to-supervise claims against Jackson County and Defendants Turner and Bowers in their official capacity, and Defendants' motion to dismiss is DENIED in regards to these claims.

> **f. Defendants' motion to dismiss Plaintiff's § 1983 claims against Defendants Turner and Bowers in their official capacity for failure to train and failure to supervise is GRANTED (Count III).**

Defendants argue Plaintiff's § 1983 claims against Defendants Turner and Bowers in their official capacity should be dismissed because it is redundant of Plaintiff's Count III against Jackson County. Suggestions in Supp. at 19–20. Because Plaintiff's failure-to-train and failure-to-supervise claims against Defendants Turner and Bowers in their official capacities is functionally equivalent to Plaintiff's corresponding claims under Count III against Jackson County, Defendants' motion is GRANTED. Count III against Defendants Turner and Bowers in their official capacities is DISMISSED WITHOUT PREJUDICE.

**g. Defendant's Motion to dismiss in regard to Plaintiff's Claim for "Supervisory Monell Liability" against Jackson County and Defendants Turner and Bowers in their official and personal capacities (Count II) is GRANTED.**

Count II asserts that Jackson County is liable under § 1983, along with Defendants Turner and Bowers in their official and personal capacities, because they failed to train and supervise subordinate corrections officers and failed to implement appropriate policies to ensure that JCDC inmates were protected from serious harm. Am. Compl. ¶¶ 75–82. Defendant argues that Plaintiff has failed to allege that Jackson County, Defendant Turner, or Defendant Bowers undertook any conduct which violates a constitutional right, and therefore Defendant Bowers and Turner are entitled to qualified immunity on Plaintiff's personal capacity claims. Suggestions in Supp. at 11; Reply at 2–4, ECF No. 17. Defendants also argue that the claims against Jackson County and Defendants Turner and Bowers in their official capacity should be dismissed for failure to allege facts demonstrating municipal liability under *Monell*. Suggestions in Supp. at 7–9, Reply at 1–2.

The claims contained in Count II are entirely duplicative of the claims contained in Count III. However—except for paragraph 75, which incorporates all prior allegations in the Amended Complaint—Count II contains no factual allegations. As the Court noted above, failure–to–train and failure–to–supervise claims require Plaintiff to plead facts demonstrating a supervisor's deliberate indifference. While Plaintiff pled such facts in Count III, *see* Am. Compl. ¶¶ 85–87, he did not do so in Count II. *See id.* ¶ 75 (incorporating only the "aforementioned" allegations into Count II).

19

Defendants Bowers and Turner are therefore entitled to qualified immunity on Plaintiff's Count II against them in their personal capacity,[11] and these claims are DISMISSED. Because Plaintiff has failed to state the existence of an underlying constitutional deprivation, his claims in Count II against Jackson County and against Defendants Turner and Bowers in their official capacity are also DISMISSED WITHOUT PREJUDICE.

### h. Defendant's Motion to Dismiss Plaintiff's claims against Jackson County and Defendants Bowers and McKenzie in their official and personal capacity for failure to provide adequate medical care (Count VI) is GRANTED.

Plaintiff's final § 1983 claim asserts that Defendants Bowers and McKenzie, and Jackson County as a result, violated Plaintiff's Fourteenth Amendment rights by failing to provide him adequate medical care after he was attacked. Am. Compl. ¶¶ 122–27. Defendants argue Plaintiff has failed to allege sufficient facts to state a claim for denial of medical care. Suggestions in Supp. at 21; Reply Br. at 6–7.

In order to state a claim for failure to provide adequate medical care, a plaintiff must allege deliberate indifference, meaning that he "suffered from an objectively serious medical need and [jail] officials actually knew of, but deliberately disregarded, the need." *Nelson v. Shuffman*, 603 F.3d 439, 448 (8th Cir. 2010).

Plaintiff does allege that he sustained serious injuries during the attack, *see* Am. Compl. ¶ 123, however Plaintiff includes no factual allegations that Defendants denied him medical care. Plaintiff only alleges that "Defendant McKenzie failed to provide any first aid to Plaintiff," "request immediate medical assistance," or "immediately notify the supervisor on duty," and that Defendant Bowers likewise never requested medical assistance. Am. Compl. ¶ 63. This is not

---

[11] Defendant moved to dismiss on grounds of qualified immunity, not because Plaintiff failed to plead sufficient facts to state a plausible claim for relief. *Twombly*, 550 U.S. 544, 570 (2007). Defendants are technically correct that, at the motion to dismiss stage, they are entitled to qualified immunity where Plaintiff fails to allege a deprivation of a constitutional right, though this is the same inquiry as is required under *Twombly*. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing Fed. R. Civ. P. 12(b)(6)).

sufficient to state a § 1983 claim for failure to provide adequate medical care.  Further, it appears that Plaintiff was assessed by JCDC medical staff after the incident.  Incident Report, Pl. Ex. 8, ECF No. 10-8 ("The inmates [sic] was taken to J2 to be assess [sic] by HSU staff.").

Plaintiff's claims in Count VI against Defendants Turner and Bowers in their personal capacity are DISMISSED.  Because Plaintiff has failed to state the existence of an underlying constitutional deprivation, his claims in Count VI against Jackson County and against Defendants Turner and Bowers in their official capacity are also DISMISSED.

### III.    State Law Claims

### a. Defendant Jackson County is not entitled to sovereign immunity on Plaintiff's premises liability claim (Count IV).

Plaintiff's Count IV asserts a negligence claim based on premises liability against Jackson County for failing to equip JCDC with adequate surveillance cameras and cell door locks.  Am. Compl. ¶¶ 95–110.  Defendants argue that Jackson County is entitled to sovereign immunity on this claim.  Suggestions in Supp. at 9, 14–18.

Under Missouri Revised Statute § 537.600.1, public entities in Missouri are immune from suit for their negligent acts.  However, the Missouri General Assembly has waived this immunity in a few limited circumstances,[12] such as where a plaintiff's injury is "caused by the condition of a public entity's property," and the plaintiff establishes

  1) that the property was in dangerous condition at the time of the injury,
  2) that the injury directly resulted from the dangerous condition,
  3) that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and

---

[12]  Public entities in Missouri enjoy sovereign immunity except where an injury results from a public employee's negligent operation of a motor vehicle, Mo. Rev. Stat. § 537.600.1(1); where an injury results from a dangerous condition on public property, § 537.600(2); and—to the extent of coverage—where the public entity has purchased liability insurance. § 537.610.  *See also Wyman v. Missouri Dep't of Mental Health*, 376 S.W.3d 16, 19 (Mo. Ct. App. 2012)

4) that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Mo. Rev. Stat. § 537.600.1 (2).

In order to plead the first element of the dangerous condition exception to sovereign immunity, a plaintiff must plead "a specific property defect." *Bates v. State*, 664 S.W.2d 563, 565 (Mo. Ct. App. 1983). "An intervening criminal act without any contributing property defect is not enough." *Id.* Defendants argue that Plaintiff "has not [pled] any facts alleging an actual defective condition of the property." Suggestions in Supp. at 15–16. Defendants misrepresent the Amended Complaint. [13] Plaintiff pled that the three inmates were able to obtain access to his cell because of faulty door locks and because of poor placement of security cameras and/or the fact that security cameras and monitors were not working. Am. Compl. ¶¶ 28, 57.

Defendant next argues that Plaintiff has failed to plead that his injury "directly resulted" from a dangerous condition because Inmates Covington and England and the unnamed inmate were the actual cause of his injury. Defendant argues that "Missouri caselaw holds that when an injury results from the intentional criminal conduct of another person and not the direct result of the physical condition of the property then sovereign immunity is not waived." Suggestions in Supp. at 17.

---

[13] A number of Defendants' arguments in the instant motion incorrectly state the Amended Complaint does not include a relevant factual allegation. *See e.g.*, Suggestions in Supp. at 20–21 ("Specifically, in regard to [Defendant Bowers], Plaintiff has failed to assert anything more than a threadbare factual recitation of a cause of action. Plaintiff states that Defendant Bowers 'approved' a report written by another correctional officer and 'without further investigation distributed the report to third parties as accurate.' It is unclear what possible cause of action those facts lend themselves to . . . ." (citing Am. Compl. ¶ 64)). This is especially concerning since Defense Counsel assures the Court that it has "combed through the Complaint," Reply at 6, and thus Defense Counsel's numerous misrepresentations regarding the contents of the Amended Complaint cannot be written off to inadvertence. Further, Defendants have consistently failed to cite to controlling law. In addition, many of Defendants' arguments—for example, Defendants' argument regarding the PLRA, *see supra* note 4, and Defendants' argument that Plaintiff's right to be protected from attack by other inmates was not clearly established, *see* Section II.a.ii; Suggestions in Supp. at 11–12—are so absurd that the Court questions whether they were made in good faith. Defense Counsel is warned that future misstatements of the record may result in sanctions.

Defendants do not point to any such Missouri caselaw, and research does not bear out their assertion. In *Thompson v. City of St. Joseph*, an individual stole a vehicle and—while driving impaired and in excess of the posted speed limit—drove two wheels into the ditch on the right side of a two-lane road. 597 S.W.3d 687, 689 (Mo. Ct. App. 2019). The individual then attempted to steer the vehicle leftward back onto the road. *Id.* In order to do this, the front passenger tire had to clear a "severe" nine-inch drop at the edge of the roadway. *Id.* at 691–92. The tire's interaction with the drop caused a "slingshot reentry" whereby the vehicle took off to the left very quickly. *Id.* The slingshot reentry resulted in the vehicle colliding with the plaintiff's vehicle, which was traveling in the other lane in the opposite direction. *Id.* at 689. The plaintiff then sued the City of St. Joseph, alleging the nine-inch drop on the edge of the road constituted a dangerous condition. The city argued—much like Jackson County does here—that "all criminal actions preclude waiver of sovereign immunity." *Id.* at 694. The court was not persuaded by this argument, and held that an intervening cause, even a criminal act, "will not preclude liability where it is itself a foreseeable and natural product of the original negligence." *Id.* at 692, 694.

Door locks and security cameras are installed in jails not only to keep inmates from escaping, but also to protect inmates' safety from attack by other inmates. In this case, the assault on Plaintiff was a foreseeable and natural product of faulty door locks and of non-working and poorly placed security cameras. As such, Plaintiff has sufficiently pled the second element of a dangerous condition exception to Jackson County's sovereign immunity. Defendants' motion with regards to Count IV is DENIED.

**b. Defendants Bowers and McKenzie are entitled to sovereign immunity on Plaintiff's claim against them in their official capacities for breach of ministerial duties (Count V).**

Plaintiff's Count V asserts a negligence claim against Defendants Bowers and McKenzie in their official capacity based on the theory that Bowers and McKenzie breached their duties to properly supervise and care for inmates. Am. Compl. ¶¶ 6–7, 111–121. Defendants argue that Bowers and McKenzie are entitled to sovereign immunity on this claim. Suggestions in Supp. at 19–20.

Suits against state officials in their official capacity are treated as suits against the State. *Edwards v. McNeill*, 894 S.W.2d 678, 682 (Mo. Ct. App. 1995) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Plaintiff's Count V against Bowers and McKenzie in their official capacity is therefore treated as a claim against Jackson County. Because public entities such as Jackson County are entitled to sovereign immunity from tort action, Mo. Rev. Stat. § 537.600.1, and because Plaintiff's official capacity claims in Count V do not fall within any of the exceptions to sovereign immunity, *see McIlvoy v. Sharp*, 485, S.W.3d 367, 372 (Mo. Ct. App. 2016) (dismissing tort claims brought by an inmate against a municipal correctional center), Defendants' motion is GRANTED in regards to Count V against Defendants Bowers and McKenzie in their official capacities. These claims are DISMISSED WITHOUT PREJUDICE.

**c. Defendants Bowers and McKenzie are not entitled to official immunity on Plaintiff's claim against them in their personal capacities for breach of ministerial duties (Count V).**

Plaintiff's Count V also asserts a negligence claim against Defendants Bowers and McKenzie in their personal capacities based on the theory that Bowers and McKenzie breached their duties to properly supervise and care for inmates. Am. Compl. ¶¶ 6–7, 111–121.

Case 4:21-cv-00023-DGK   Document 21   Filed 03/01/22   Page 24 of 27

Defendants argue that Bowers and McKenzie are entitled to official immunity on this claim. Suggestions in Supp. at 10–11; Reply at 3.

Official immunity is a doctrine created by Missouri courts to protect public officials from liability for "alleged acts of ordinary negligence committed during the course of their official duties for the performance of discretionary acts." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008). "The official immunity doctrine, however, does not provide public employees immunity for torts committed when acting in a ministerial capacity." *Id.* "Whether an act is discretionary or ministerial depends on the degree of reason and judgment required to perform the act." *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. 2006) (quotation omitted).

> An act is discretionary when it requires the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued. Conversely, a ministerial function is of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed.

*Id.* (citations and quotations omitted). The Court considers three factors to determine whether an act is ministerial or discretionary: "(1) the nature of the duties; (2) how much policymaking or professional expertise and judgment the act involves; and (3) the consequences of withholding immunity." *Id.* (quoting *Kanangawa v. State ex rel. Freeman*, 685 S.W.2d 831, 835 (Mo. 1985)). Defendants argue Plaintiff has pled no facts showing that Defendants Bowers or McKenzie breached a ministerial duty. Suggestions in Supp. at 11. This argument is unavailing.

Plaintiff alleged that—in addition to his duties as a supervisor—Defendant Bowers possessed a duty to monitor surveillance cameras, perform well-being checks every twenty-nine minutes, and ensure that cell door locks were securely closed and functioning properly. Am.

25

Compl. ¶¶ 28, 29.  Defendant McKenzie possessed the same duties.  *Id.*  These duties were written in JCDC policies and neither McKenzie nor Bowers had discretion in whether to perform them.  *See id.* ¶ 29 ("JCDC policies prescribe that Defendants and/or corrections officer, while on duty, *shall* . . . ." (emphasis added)).  In *Davis*, a motorist sued a police officer who collided with the motorist's vehicle while driving to an emergency call.  193 S.W.3d at 762.  The Missouri Supreme Court held that "[i]mposing liability upon the officer in these cases might delay responses to emergency calls, thereby adversely affecting officers or citizens in need of emergency assistance."  *Id.* at 763.  Unlike *Davis*, wherein the plaintiff sued the officer for injuries sustained from the officer's performance of his duties, Plaintiff here alleges he was injured because Defendants Bowers and McKenzie—either out of apathy or because they were too busy elsewhere in JCDC—failed to perform their duties.  Imposing liability in this circumstance therefore does not threaten to adversely impact corrections officers' "exercise of judgment and discretion."  *Id.*  Instead, it will help to ensure that corrections officers undertake some effort to protect inmates.  *See Letterman v. Does*, 859 F.3d 1120, 1125–27 (8th Cir. 2017) (denying official immunity where corrections officers had a duty to report a medical emergency yet failed to do so).

As such, Defendants Bowers and McKenzie are not entitled to official immunity on Count V against them in their personal capacities, and the motion is DENIED in regard to these claims.

## Conclusion

Defendants' motion to dismiss for failure to state a claim is GRANTED IN PART.  Plaintiff's claims against Defendant John Doe I and John Doe II are DISMISSED WITHOUT PREJUDICE.  Count I against Defendants Turner, Bowers, and McKenzie in their official

capacities is DISMISSED WITHOUT PREJUDICE. Count II against all defendants is DISMISSED WITHOUT PREJUDICE. Count III against Defendants Turner and Bowers in their official capacities is DISMISSED WITHOUT PREJUDICE. Count V against Defendants Bowers and McKenzie in their official capacities is DISMISSED WITHOUT PREJUDICE. Count VI against all Defendants is DISMISSED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

Date:  March 1, 2022             /s/ Greg Kays
                                 GREG KAYS, JUDGE
                                 UNITED STATES DISTRICT COURT